## McMANUS v. DAVITT.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. INJURIES TO SERVANT—OBVIOUS DANGERS—FAILURE TO INSTRUCT SERVANT.
　　Failure of the master to warn a servant as to the dangerous nature of a part of a machine was not negligence, where the servant knew of that part of the machine and the manner in which it operated.

2. SAME—ORDERS OF MASTER—BURDEN OF PROOF.
　　In an action by a servant for injuries sustained while operating a machine other than the one he was employed to work at, the burden of showing that he was instructed to work on such machine by one having authority was on plaintiff.

3. SAME—EVIDENCE—SUFFICIENCY.
　　In an action by a servant for injuries sustained while operating a machine other than the one he was employed to work at, the evidence examined, and *held* that plaintiff had not shown by a preponderance of the evidence that he was instructed to work on such machine by one having authority.

Appeal from Trial Term.

Action by William McManus, by Margaret McManus, as guardian, against Albert W. Davitt. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Thos. O'Connor (John H. Gleason, of counsel), for appellant.
H. T. O'Brien (Isaiah Fellows, of counsel), for respondent.

PARKER, P. J. The sole negligence which is charged against the · defendant is that he failed to notify the plaintiff, when he changed from

the "lapper" machine to the "picker," that there were rollers at the end thereof, which received and carried away the cotton from the revolving apron upon which the plaintiff was required to place it. There were two fluted steel rollers across the machine, about $3\frac{1}{2}$ feet long, up to which the revolving apron carried cotton placed thereon, and between which such cotton was then pinched, and by their revolutions was carried into a covered part of the machine, where it was picked apart and dust and all extraneous matter was blown from it. The upper of such rollers was about three inches above the level of the apron, but, when the machine was working and cotton was on the apron, it covered the rollers so that they were not visible. This apron was about $3\frac{1}{2}$ feet wide and 3 feet long, and the plaintiff claims that he was told to spread or pad the cotton down upon this apron, and that after he had so worked at this machine about five minutes his left hand was drawn between such rollers and his fingers so badly crushed that they had to be amputated. His claim is that such rollers were a dangerous feature of that machine, of which he should have been notified.

It is plain that if, at the time he began to work on that machine, he knew of the existence of such rollers and the manner in which they were operating, then the defendant's omission to notify him of the same cannot be deemed negligence which caused the injury. He would, in that event, have begun his work fully possessed of all the knowledge that the defendant could have given him. The plaintiff is exceedingly positive that he did not know of the rollers; that he could not see them because they were covered with the cotton placed upon the apron; and he insists that he worked there without having any knowledge that any rollers were there. It is probable that he could not then see the rollers because they were so covered, but can it be credited that he did not know they were there? The plaintiff had worked on the lapper machine for five weeks. It stood in the same room, parallel to and by the side of the picker, and distant about four feet therefrom. A revolving apron carried cotton to two rollers, which picked it up and took it from the apron precisely as those upon the picker operated, and the plaintiff's work upon the lapper was to keep the apron covered with cotton, so that the revolving rollers could so deliver it to other parts of the machine. When he began work on that lapper he was shown how it worked and what he must do to keep it at work, and it would seem that instruction as to the one machine was plainly applicable as to the other. For five weeks the plaintiff had seen the picker machine run by O'Hearn within four feet of his own work, had seen the two aprons revolving and the cotton taken from the end of each in apparently the same way, and he well knew that it was taken from his own machine by the two rollers which were revolving thereon. During all that time the rollers on the picker, when it was not running, were in plain sight, and not only were such machines not running nights and mornings, but on every Saturday he helped clean both of such machines, as well as one or two others in that room. His statement that he had not, during all that time, discovered that there were rollers on the picker operating exactly as those on the lapper, is so strongly contradicted by the situation that it is incredible. And it is a very serious question whether the defendant, knowing of such surroundings, and of the similarity of the ma-

chines and of the intimate knowledge which the plaintiff had of the lapper, might not reasonably assume that he had the same knowledge of the picker, which all the time had been running beside him. Would not a man of ordinary prudence have so believed?

But, moreover, unless the plaintiff was instructed, by one having authority, to leave the lapper for a time and go to work on the picker, there has been no negligence on the defendant's part in not instructing him concerning the picker. The plaintiff testified that O'Hearn so directed him, and that Shea, who hired him, and was concededly the defendant's superintendent, told him (plaintiff) to do whatever O'Hearn instructed him to do. If these two statements are true, then we should consider the plaintiff as having been set to work by the defendant on the picker; but if either is false, then the defendant owed the plaintiff no duty of instruction concerning the picker. As to the first statement, O'Hearn testified positively and distinctly that he did not tell the plaintiff to go to work on the picker. He squarely contradicts the plaintiff on that point. There is no direct evidence corroborating either on that question, nor do I find in this record any reason why the jury should have believed the plaintiff rather than O'Hearn. On the contrary, the plaintiff's statement, a few days after he was hurt, to the defendant and Porter, as to how he came to be hurt, made no claim that he was set to work on the picker, nor, indeed, did it claim that he was at work thereon. If the defendant's and Porter's statement of what he then told them is correct, it rather corroborates O'Hearn than the plaintiff.

But the burden was upon the plaintiff to prove, by a preponderance of evidence, that O'Hearn did set him to work on the picker. Evidently, unless he was so set at work on that machine, the defendant has omitted no duty which he owed the plaintiff, and, unless that fact is made to appear by a preponderance of evidence, the plaintiff has failed to make out his case. Moreover, Shea testified that he hired the plaintiff, took him to the lapper, showed him how to manage it, and set him to work on it, and that he never instructed the plaintiff to obey O'Hearn's orders. There is no evidence in the case that warrants the conclusion, save that statement of the plaintiff that O'Hearn had been authorized by the defendant to direct the plaintiff, or any one else, where he was to work. Save for the plaintiff's statement, O'Hearn was a mere co-employé with the plaintiff, and, if he did set the plaintiff to work on the picker, it was the mere act of a co-employé, done for his own convenience, and not as the act of the master. Now, why should the jury have believed the plaintiff in this particular, rather than Shea? The burden was again upon the plaintiff to establish this fact by a preponderance of evidence. Is it to be said that, in the absence of proof corroborating either, a jury may disregard the evidence of one who is at work for the defendant, merely because he is so at work, and to that extent is interested in the result? So the plaintiff is interested in the result fully as much as any such witness could be; and when, as in this case, the statement of the plaintiff on the one hand, and that of the employé on the other, are equally probable, the character of each equally good, and no reason apparent why the one statement is not as credible as the other, I am of the opinion that it should not be held

that the plaintiff has established his statement by a preponderance of evidence because the witness who contradicts him is an employé of the defendant. To award damages for alleged negligence against any defendant on such a theory is practically a denial of justice to the employer. And yet it is a method of reasoning that easily satisfies the conscience of very many juries, and enables them to follow the dictates of their hearts instead of their judgments.

There are so many facts in this case which should be proven by a preponderance of evidence on the part of the plaintiff, in order to entitle him to recover, that have been left in great doubt, and upon which the evidence is most unsatisfactory, that I am of the opinion that this verdict should be set aside and a new trial had before another jury.

Judgment and order reversed, and a new trial granted; costs to appellant to abide the event. All concur; CHASE, J., in result.